# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

LUCINDA MURDOCK,

    *Plaintiff,*

vs.

CITY OF WICHITA, KANSAS,

    *Defendant.*

Case No. 09-2103-EFM

## MEMORANDUM AND ORDER

Plaintiff Lucinda Murdock brings this pro se action against Defendant City of Wichita, Kansas, alleging various forms of employment discrimination. In an Order dated June 10, 2010, the Court granted Defendant's motion to dismiss Plaintiff's first complaint. However, it afforded Plaintiff an opportunity to file an amended complaint, which she has since done. This matter is now before the Court on Defendant's motion to dismiss the amended complaint (Doc. 51), and Plaintiff's motion to reconsider the June 10 Order (Doc. 53). For the reasons stated below, the Court denies in part and grants in part Defendant's motion, and denies Plaintiff's motion in its entirety.

### I. Background

Plaintiff is an African-American female over the age of forty and a Christian. She began working for the City of Wichita's Transit Division on May 2, 2000, as a van operator. During her tenure with the City, one of Plaintiff's supervisors was Brad Davis, the superintendent of transportation. According to Plaintiff, Davis began making inappropriate comments to her almost

immediately after she was hired. For example, on October 31, 2000, Davis stated, "You don't have to go to work you can walk around in the garage for me. Hell you don't have to work today."[1] In July 2002, Davis stated "Damn you look good."[2] Additionally, Davis made sexual advances toward her, which Plaintiff, unlike other female transit employees, rebuffed. Plaintiff alleges that after Davis found out that she was seeing another City employee, he became enraged and made it his personal mission to make sure that she was terminated.[3] Plaintiff claims that she repeatedly complained of the treatment she was receiving and the fact that Davis was having a number of affairs with other employees to her other supervisors, but no immediate action was taken. Eventually, though, near the end of 2009, Davis' employment was terminated, apparently because he improperly gave his then girlfriend a position in the dispatch office.

In addition to Davis, Plaintiff claims that other supervisors engaged in unlawfully discrimination against her and others. In support of her claim, Plaintiff points to the fact that, on February 22, 2007, Jay Banasiak, general manager of the transit division, sent Plaintiff home for yelling at Anna Sparline, one of Plaintiff's white supervisors, in Sparline's office, but did not discipline a white employee who got into a yelling match with an African American in the entry way of the front office. Plaintiff also points to the fact that one African American was terminated for having five lates, while white employees with over ten lates were retained. Plaintiff claims that she repeatedly complained to Scott Moore, whom she alleges was the City Manager at the time pertinent

---

[1] Doc. 48, p. 3.

[2] *Id.*

[3] According to Plaintiff, one way that Davis attempted to accomplish this goal was by putting stipulations on her that others did not have.

to her claims, about the treatment she and the other African American employees in the transit division were receiving. Her last complaint was made on February 22, 2007.

On April 3, 2007, the City terminated Plaintiff's employment. In a letter signed by Jay Banasiak, the City stated that Plaintiff's employment was being terminated because of an incident that transpired on February 15, 2007. On that day, Plaintiff stated twice into her radio that she was going to knock out one of her riders, a legally blind, ninety-four year old white women, because the rider had allegedly cursed at her and punched her in her right shoulder when Plaintiff refused to back the van into the rider's driveway. Apparently, the rider was outside of the van when the comments were made. According to Plaintiff, two white male bus drivers engaged in substantially similar conduct in May 2010 – one of the drivers supposedly hit a black passenger after the passenger struck him, and the other driver said he was going to slap a black passenger while the passenger was still on the bus – however, no adverse action was taken against these drivers.

Believing that her termination was unlawful, Plaintiff filed a grievance. Because the parties were not able to amicably resolve the grievance, it proceeded to arbitration. There, the arbitrator concluded that the February 15 event did not warrant dismissal, and that Murdock should be reinstated with no loss of seniority or benefits and with back pay.

While her grievance was pending, Murdock filed a charge of discrimination form with the Kansas Human Rights Commission. On this form, Murdock checked the boxes indicating that she believed that she was discriminated against based on her race, color, sex, religion and was retaliated against. Murdock received a right to sue letter, and filed the present action, asserting the following causes of action: race discrimination, color discrimination, sex discrimination, age discrimination, religion discrimination, sexual harassment, wrongful termination, and retaliation.

## II. Standards

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.' "[4] "[T]he mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims."[5] "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted."[6]

In determining whether a claim is facially plausible, the Court must draw on its judicial experience and common sense.[7] All well pleaded facts in the complaint are assumed to be true and are viewed in the light most favorable to the plaintiff.[8] Allegations that merely state legal conclusions, however, need not be accepted as true.[9]

Because Plaintiff is pursuing this action pro se, the Court must be mindful of additional considerations. "A pro se litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers."[10] However, "it is not the proper

---

[4]*Ashcroft v. Iqbal*, - - - U.S. - - -, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twonbly*, 550 U.S. 544, 570 (2007)).

[5]*Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).

[6]*Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003).

[7]*Iqbal*, 129 S. Ct. at 1950.

[8]*See Zinermon v. Burch*, 494 U.S. 113, 118 (1990); *Swanson v. Bixler*, 750 F.2d 810, 813 (10th Cir. 1984).

[9]*See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

[10]*Id.*

function of the district court to assume the role of advocate for the pro se litigant."[11]  "[T]he court will not construct arguments or theories for the plaintiff in the absence of any discussion of those issues."[12]

### III.  Analysis

Now before the Court is Defendant's motion to dismiss and Plaintiff's motion to reconsider the June 10 Order.  The Court will address these motions in turn.

**1.  Defendant's Motion to Dismiss**

In its motion, Defendant seeks to have all of Plaintiff's claims dismissed.  As discussed more fully below, the Court denies in part and grants in part Defendant's request.

### A. Race, Sex, Color, and Religion Discrimination

Plaintiff first alleges that Defendant discriminated against her on the basis of race, sex, color, and religion.  A discrimination claim under Title VII arises if an employer fails or refuses to hire or discharges any individual, or otherwise discriminates against any other individual with respect to their compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.[13]  To state a prima facie case for discrimination under Title VII, and thus establish a plausible discrimination claim, a plaintiff must show that: (1) they were a member of a protected class; (2) they suffered an adverse employment action; and (3) the alleged action took place under circumstances giving rise to an inference of discrimination.[14]

---

[11] *Id.*

[12] *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991).

[13] 42 U.S.C. § 2000e-2(a)(1).

[14] *See, e.g., E.E.O.C. v. PVNF, L.L.C.*, 487 F.3d 790, 800 (10th Cir. 2007).

-5-

Here, viewing the complaint and the nearly 400 pages of attached material liberally, Plaintiff has adequately plead race discrimination and sex discrimination claims, as Plaintiff's allegations establish that she is an African American female who was terminated and give rise to a plausible inference that her termination was the result of race and sex discrimination. Therefore, the Court will deny Defendant's motion as it relates to those claims. However, Plaintiff's color discrimination and religion discrimination claims fail. Beginning with the color discrimination claim, there is no allegation that Plaintiff is a dark-colored African American, as opposed to a light-colored African American, or vice versa, and was treated differently than African Americans of lighter- or darker-colored skin. Accordingly, this claim must be dismissed.[15] As for Plaintiff's religion claim, the only religious-based allegation in the materials submitted by her is the single sentence, "I am a Christian and don't bother nobody."[16] Nothing in Plaintiff's materials discusses how non-Christians were treated better or suggests that Plaintiff was treated adversely because of some religious animus that existed in the transit division. Accordingly, the Court will also dismiss Plaintiff's religion discrimination claim.

---

[15]*See, e.g., Bryant v. Bell Atl. Md., Inc.*, 288 F.3d 124, 132 n.5 (4th Cir. 2002) ("Color discrimination arises when the particular hue of the plaintiff's skin is the cause of the discrimination, such as in the case where a dark-colored African-American individual is discriminated against in favor of a light-colored African-American individual.").

[16]Doc. 28, p. 1.

## B. Age Discrimination

Plaintiff also attempts to state a claim for age discrimination. In her amended complaint, Plaintiff describes her theory for her age discrimination claim as follows, "[the passenger] being 94 years old and I'm 47[,] that's where the age discrimination comes in at."[17] There is no other age-related allegation in the complaint.

Age is protected under the Age Discrimination Employment Act ("ADEA").[18] The ADEA makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age."[19] In order to file an ADEA claim, a plaintiff must exhaust his or her administrative remedies.[20] This is a jurisdictional perquisite, not merely a condition precedent to suit.[21] Based on the amended charge form, the right to sue letter, and the other materials submitted by Plaintiff, it does not appear that Plaintiff has made any age discrimination claim with the EEOC. As a result, the Court lacks subject matter jurisdiction over this claim. Assuming, arguendo, that Plaintiff did exhaust her administrative remedies, her age claim nevertheless fails because there is no factual link between the facts alleged and her membership in the protected class, persons over the age of forty. As a result, this claim should be dismissed as well.

---

[17]Doc. 28, p. 8.

[18]29 U.S.C. §623.

[19]29 U.S.C. §623(a)(1).

[20]*See, e.g., Shikles v. Sprint/United Mgmt.*, 426 F.3d 1304, 1317 (10th Cir. 2005).

[21]*Id.*

## C. Retaliation

Plaintiff next alleges that Defendant's decision to terminate her was retaliation for complaints she had made about the treatment she was receiving. The relevant portion of Title VII relating to a retaliation claim provides, "it shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice."[22] To state a prima facie retaliation claim, a plaintiff must plead sufficient facts that show: (1) they participated in a protected activity; (2) the defendant took an employment action disadvantaging them; and (3) there was a casual connection between the protected activity and the adverse action.[23] A plaintiff engages in a protected activity under Title VII when they either (1) oppose any practice made an unlawful employment practice or (2) make a charge, testify, assist, or participate in any manner in an investigation or proceeding.[24]

In the present case, Plaintiff has sufficiently alleged a retaliation claim. Among other things, Plaintiff alleges that as recently as approximately six weeks before her termination she complained to the City Manager about the treatment African Americans in the transit division were receiving.[25] This proximity is sufficient to establish a plausible claim of retaliation.[26] Accordingly, the Court denies Defendant's motion as it relates to this claim

---

[22] 42 U.S.C. § 2000e-3(a).

[23] *Antonio v. Sygma Network, Inc.*, 458 F.3d 1177, 1181 (10th Cir. 2006).

[24] *Enadeghe v. Ryla Teleservices, Inc.*, 2010 WL 481210, at *8 (N.D. Ga. Feb. 3, 2010).

[25] *See, e.g., Hertz v. Luzenac Am., Inc.*, 370 F.3d 1014, 1015 (10th Cir. 2004) ("Protected opposition can range from filing formal charges to voicing informal complaints to superiors.").

[26] *See, e.g., Ramirez v. Oklahoma Dep't of Mental Health*, 41 F.3d 584, 596 (10th Cir. 1994) (concluding that a one and one-half month period between protected activity and adverse action may establish causation); *see also Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir. 1999) (assuming that temporal proximity of two months and one week is sufficient to support a prima facie case of retaliation).

### D. Wrongful Termination

Plaintiff also asserts a wrongful termination claim. It is not entirely clear what the basis is for this claim. To the extent this claim is premised on Plaintiff's race, color, religion, sex, or alleged retaliation, it must be dismissed because Title VII provides an adequate remedy.[27] To the extent that it is based on some other ground,[28] it should also be dismissed because Plaintiff has not alleged facts that would support such a claim. Therefore, the Court grants Defendant's motion to dismiss Plaintiff's wrongful termination claim.

### E. Sexual Harassment

Plaintiff's last claim is one for sexual harassment. Sexual harassment may take a variety of forms, but courts have consistently recognized two distinct categories of sexual harassment claims: quid pro quo sexual harassment and hostile work environment sexual harassment.[29] "The gravaman of a quid pro quo sexual harassment claim is that tangible job benefits are conditioned on an employee's submission to conduct of a sexual nature and that adverse job consequences result from the employee's refusal to submit to the conduct."[30] "Alternatively, hostile work environment harassment arises when sexual conduct has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment."[31] The harassment in a hostile work environment case must be "sufficiently severe

---

[27]*Adams v. Gardner Constr. Group*, 2008 WL 1767085, at *1 (W.D. Okla. Apr. 16, 2008).

[28]*See Hughes v. Keath*, 328 F. Supp. 2d 1161, 1163-65 (D. Kan. 2004) (discussing some of the grounds that a wrongful termination claim can be based on).

[29]*See Hicks v. Gates Rubber Co.*, 833 F.2d 1406, 1413 (10th Cir. 1987).

[30]*Pinkerton v. Colo. Dep't of Transp.*, 563 F.3d 1052, 1060 (10th Cir. 2009).

[31]*Hicks*, 833 F.2d at 1413 (internal quotation marks omitted).

or pervasive to alter the conditions of [the victim's] employment and create an abusive working environment."[32]

Murdock has adequately plead both a quid pro quo and hostile environment sexual harassment claim. Murdock's allegations paint the picture of a supervisor who abused his position of authority to extract sexual benefits from his female employees, and when a female employee refused to succumb to his inappropriate advances, he used his power to attempt to have them terminated. Further, Murdock's complaint implies that this conduct was pervasive, as it occurred throughout her employment the City. As a result, the Court concludes that Plaintiff's sexual harassment claims are plausible, and, thus, denies Defendant's motion to dismiss in so far as it seeks dismissal of such claims.

**2. Plaintiff's Motion to Reconsider**

Pursuant to District of Kansas Rule 7.3, a party may seek reconsideration of an earlier order. A motion seeking reconsideration "shall be based on (1) an intervening change in controlling law, (2) the availability of new evidence, or (3) the need to correct clear error or prevent manifest injustice."[33] Whether to grant a motion for reconsideration is within the court's discretion.[34]

In her motion, Plaintiff fails to establish that any of the aforementioned grounds for granting a motion to reconsider is present here. Accordingly, the Court denies Plaintiff's motion.

---

[32]*Id.* (alterations in original omitted) (internal quotation marks omitted).

[33]D. Kan. Rule 7.3(b).

[34]*Nat'l Labor Relations Bd. v. Midwest Heating & Air Conditioning, Inc.,* 2008 WL 4330022, at * 1 (D. Kan. Sept. 16, 2008).

**IT IS THEREFORE ORDERED** that Defendant's Motion to Dismiss (Doc. 51) is hereby DENIED IN PART and GRANTED IN PART.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Reconsideration (Doc. 53) is hereby DENIED.

**IT IS SO ORDERED**.

Dated this 30th day of March, 2011.

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE