# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

LUCINDA B. MURDOCK,

       *Plaintiff,*

  vs.                                  Case No. 09-CV-02103-EFM

CITY OF WICHITA, KANSAS,

       *Defendant.*

## MEMORANDUM AND ORDER

Plaintiff, Lucinda B. Murdock, appears *pro se* in this case and asserts claims for sexual harassment, retaliation, and employment discrimination related to her race and sex, all under Title VII of the Civil Rights Act of 1964.[1]  Before the Court are Defendant's motion for summary judgment and two consecutive motions for summary judgment filed by Plaintiff. Because both of Plaintiff's dispositive motions concern a single defendant, contemplate the same claims, and generally discuss the same factual allegations, the Court will consider both

---

[1] 42 U.S.C. § 2000e, *et. seq.*

submissions as a single cross-motion for summary judgment.[2]   For the foregoing reasons, the Court grants Defendant's motion and denies Plaintiff's motion.

## I.        Factual and Procedural Background[3]

Plaintiff Lucinda Murdock is an African-American female who has been employed by Defendant, City of Wichita, since May 2, 2000.  Defendant terminated Murdock's employment on April 3, 2007, but ultimately reinstated her on October 9, 2008.  Plaintiff's claims arise from the circumstances surrounding her employment and termination.

During her employment with the City, Plaintiff has worked as a van operator for Wichita Transit's paratransit service, which provides safe transportation to disabled individuals.   Van operators have an opportunity to select their routes through a bidding process based on seniority.  Although Plaintiff had multiple opportunities to change her route, she maintained the same route for several years prior to her termination.  City dispatchers use a transit computer program to assign passengers to certain routes based on geographical and temporal efficiency.  Plaintiff claims that on several occasions, dispatchers made her work more difficult by assigning her route a disproportionately high number of passengers who were confined to wheelchairs.  Plaintiff does not assert that these passenger assignments were the result of sexual harassment or were based in any way on her race or sex.  She instead alleges that dispatchers made such assignments simply because they were simply "mad, jealous, upset and just evil."[4]

---

[2] The continuity of argumentation found in Plaintiff's motions is evidenced by the fact she submitted identical documents to serve as her second motion for summary judgment (Doc. 105) and her response to Defendant's dispositive motion (Doc. 108).

[3] In accordance with summary judgment procedures, the facts set forth herein are uncontroverted for the purposes of the present motions before the Court.  If controverted, the facts are related in the light most favorable to the Plaintiff, who opposes Defendant's motion for summary judgment.

[4] Excerpts of Lucinda Murdock Deposition, Vol. III, Def. Ex. 9, at 532.

At all times relevant to this lawsuit, the City of Wichita (the "City") had a policy prohibiting sexual harassment.  Plaintiff had reviewed the City's sexual harassment policy, was familiar with its terms, and had attended harassment training classes at the City.  The policy distinguishes compliments from sexual harassment, which it defines as "behavior that is not welcome, that is personally offensive, that lowers morale and that, therefore, interferes with work effectiveness."[5]  The City's sexual harassment policy also provides that "it is every employee's responsibility to report such problems so the City can take appropriate steps to correct the situation."[6]  Complaints of sexual harassment were to be reported immediately to the department supervisor, the department EEO officer, the department director, or the City's Affirmative Action Administrator.  In the event that a complaint concerned an employee's immediate supervisor, the policy required that the employee report the conduct to a higher level supervisor or to the City's Affirmative Action Administrator.

Plaintiff's sexual harassment claim primarily involves three comments that she attributes to the former superintendent of transportation, Brad Davis.  Davis' first alleged comment occurred during Plaintiff's application with the City in the spring of 2000, when Davis said that Murdock was so pretty that he could not believe that she was the sister of another City employee, Dwight "Hollywood" Williams.  Davis' second comment came on October 31, 2000, when he made the following remarks concerning Plaintiff's Halloween costume: "You don't have to work.  You can walk around here in the garage."[7]  Plaintiff asserts that a third incident occurred

---

[5] Policy Prohibiting Sexual Harassment, Def. Ex. 13, at 1.

[6] *Id.*

[7] Excerpts of Lucinda Murdock Deposition, Vol. III, Def. Ex. 8, at 355.

in 2002, when Davis told Murdock, "Damn, you look good."[8]  Plaintiff was not offended by any of Davis' comments, did not respond, and did not report the comments to any of her supervisors.

In support of her sexual harassment claim, Murdock also alleges that Davis had previously engaged in consensual relationships with other City employees, a practice not prohibited by City policy.  From this information, Ms. Murdock formed the opinion that Davis wanted to engage in a sexual relationship with her, although Plaintiff admits that Davis never mentioned such an arrangement.  Plaintiff alleges that Davis became angry and jealous in November of 2002, when he learned that she was dating another City employee, Troy Bowens.  While Davis never made any statements concerning persons who Murdock may have been dating at any given time, Plaintiff contends that jealousy led Davis to engage in retaliatory conduct, including a personal mission to see that Plaintiff was terminated.  In support of this allegation, Plaintiff states that she was wrongfully disciplined and sent home by Davis when she shouted at a supervisor, Anna Sparlin, who had issued her a disciplinary designation of "late."

Plaintiff's race discrimination claim involves to two comments that she attributes to her supervisor, Howard Morris.  First, on December 31, 2000, Morris asked Murdock, "Do you want me to slap the hell out of you?"[9]  Plaintiff does not know what prompted Morris' statement, and she does not point to any evidence that the comment was related to her race or sex.  Murdock started to draft a grievance to report the incident, but never submitted it to the City.  Second, Morris used the phrase, "you people,"[10] while Morris and Plaintiff had a disagreement over his assignment of overtime work to employees with less seniority.  Plaintiff filed a grievance, contending that these comments were directed at her race.  The grievance received a full

---

[8] Excerpts of Lucinda Murdock Deposition, Vol. I, Def. Ex. 6, at 31.

[9] Excerpts of Lucinda Murdock Deposition, Vol. I, Def. Ex. 10, at 662-63.

[10] Def. Ex. 6, at 113-14.

investigation from Jay Banasiak, who served as the general manager for Wichita Transit. After meeting with Howard Morris and representatives from Plaintiff's union, the City determined that when Morris used the phrase, "you people," he referred only to van drivers, not to African Americans. For this reason, Plaintiff's grievance was denied. It is uncontroverted that none of Plaintiff's co-workers or supervisors made any direct comments about Murdock's race, and that Murdock never heard racial slurs directed toward her or toward any other African-American employee.[11]

Plaintiff's race and sex discrimination claims also arise from her termination, which occurred on April 3, 2007. In a letter signed by Jay Banasiak, the City stated that it terminated Plaintiff's employment because of an incident that transpired on February 15, 2007, between Plaintiff and one of her passengers, Mary Rowles. At that time, Mary Rowles was a frail, 94-year-old, Caucasian woman who was legally blind and generally relied on a wheelchair. On the date of the incident, it was a cold day with some snow and ice on the ground. As Plaintiff's van approached Rowles' home, Ms. Rowles asked Plaintiff to pull into her driveway instead of releasing her on the street.[12] When Plaintiff refused to pull into Rowles' driveway, Rowles struck Plaintiff on the right shoulder and shouted, "Pull up into the driveway, damn it,"[13] then began to exit the vehicle.

After Rowles struck Plaintiff's shoulder, Plaintiff called the radio dispatcher and said, "my client wanted me to pull up into the driveway, and I refused. She became angry. I'm about

---

[11] Plaintiff claims that she had occasionally heard African-American employees at Wichita Transit use the word "nigger" between one another, but she contends that such use of that term was not racist or offensive.

[12] Wichita Transit's van operators typically make their stops on the street to avoid backing into oncoming traffic. However, Plaintiff acknowledges that she and other drivers have pulled into passengers' driveways on occasion when it was safe to do so.

[13] Excerpts of Lucinda Murdock Deposition, Vol. II, Def. Ex. 7, at 178.

to knock her out."[14]  Within seconds, Plaintiff's supervisor, Howard Morris, got on the radio and asked her to describe the situation.  Plaintiff told Morris "I'm about to knock her out,"[15] and "Y'all need to put her on a new route or put her on a different route or something like that.  Put her on another route or there's going to be some mess."[16]  When Plaintiff twice said, "I'm about to knock her out," she contemplated striking Rowles until she became unconscious.[17]

The City publishes and disseminates an Operator's Manual, which governs the conduct of Wichita Transit employees, including van operators.  The Operator's Manual provides that employees are subject to immediate termination if they engage in conduct that constitutes a Class I rule violation, including threatening or verbally assaulting a passenger.  On April 3, 2007, the City terminated Plaintiff for making threatening comments concerning Mary Rowles.  The City denies that it terminated Plaintiff due to her sex, race, or as a result of any complaints that she had made during her employment.  Plaintiff concedes that she has no information or direct evidence to show that the City terminated her for any reason other than the encounter with Mary Rowles.  However, Murdock claims that she suffered disparate treatment because a male Caucasian bus driver, Terry Beaver, was not terminated for striking a passenger.  In May 2010, a large, able-bodied passenger threatened and struck Terry Beaver, and Beaver responded by using physical force in self-defense.  The City investigated the incident and found that Terry Beaver used only the physical force necessary to protect himself from further attack.  Terry Beaver was not disciplined for the altercation, and the passenger who initiated the attack was arrested.

[14] *Id.* at 179.

[15] *Id.* at 265.

[16] *Id.*

[17] Def. Ex. 8, at 268.

Asserting that her termination was unlawful, Plaintiff submitted a grievance with the assistance of her union.  When the parties failed to resolve Plaintiff's grievance amicably, the parties submitted the matter to voluntary arbitration.  Following two arbitration hearings in August 2008, the arbitrator concluded that Plaintiff's incident with Rowles did not warrant termination and recommended that Plaintiff should be reinstated with back pay and with no loss of seniority or benefits.  The Interim City Manager, Scott Moore, reinstated Plaintiff's employment by letter dated October 9, 2008.  While Moore reinstated Plaintiff's employment in accordance with the arbitrator's recommendation,[18] Moore directed that the terms of Plaintiff's reinstatement would include a six-month probationary period and that her seniority, longevity, vacation, and sick leave accrual rates would be reinstated at the conclusion of two additional years of employment with the City.

On June 18, 2008, while her grievance was pending, Plaintiff filed administrative charges with the Equal Employment Opportunity Commission ("EEOC") and the Kansas Human Rights Commission ("KHRC").[19]  Plaintiff claimed that she was discriminated against on the basis of her race, color, sex, and religion between December 31, 2000 and April 3, 2007.  She also claimed that she was sexually harassed and retaliated against.  The EEOC reviewed Plaintiff's charge and issued her a right to sue letter on December 4, 2008.  Proceeding *pro se*, Murdock filed this lawsuit, asserting causes of action for race discrimination, color discrimination, sex discrimination, age discrimination, religion discrimination, sexual harassment, wrongful termination, and retaliation.

---

[18] Under the Memorandum of Agreement between the City of Wichita and Plaintiff's union, an arbitrator's findings and award constitute mere recommendations that the City Manager may reverse.

[19] The charge that Plaintiff filed with the EEOC on June 18, 2008, amended and replaced a prior charge that Murdock had filed with the EEOC on September 18, 2007.

Defendant filed its first motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), arguing that Plaintiff's complaint was insufficient to assert plausible claims. The Court granted Defendant's motion to dismiss, and Plaintiff filed an amended complaint asserting the same claims with additional factual allegations. Defendant then filed a second motion to dismiss, arguing that Plaintiff's amended complaint failed to state claims upon which relief could be granted. The Court granted Defendant's second motion in part, dismissing Plaintiff's claims for wrongful termination and employment discrimination on the basis of age, color, and religion. The Court denied the remainder of Defendant's motion to dismiss, and the parties filed cross-motions for summary judgment on Plaintiff's remaining claims for race discrimination, sexual harassment, and retaliation.[20]

## II.      Standards

### A.      Summary Judgment

Summary judgment is appropriate if the moving party demonstrates that "there is no genuine dispute as to any material fact" and that it is "entitled to judgment as a matter of law."[21] "An issue of fact is 'genuine' if the evidence allows a reasonable jury to resolve the issue either way."[22] A fact is "material" when "it is essential to the proper disposition of the claim."[23] The Court views the evidence and all reasonable inferences in the light most favorable to the party opposing the motion for summary judgment under consideration.[24]

---

[20] Neither party's motion for summary judgment mentions Plaintiff's claim for sex discrimination, which also survived Defendant's second motion to dismiss.

[21] Fed. R. Civ. P. 56(a).

[22] *Haynes v. Level 3 Commc'ns,* LLC, 456 F.3d 1215, 1219 (10th Cir. 2006).

[23] *Id.*

[24] *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 927 (10th Cir. 2004).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact.[25]  In attempting to meet this standard, the moving party need not disprove the nonmoving party's claim; rather, the movant must simply point out the lack of evidence on an essential element of the nonmoving party's claim.[26]  If the moving party carries its initial burden, the party opposing summary judgment cannot rest on the pleadings but must bring forth "specific facts showing a genuine issue for trial."[27]  The opposing party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant."[28]  "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein."[29]  Conclusory allegations alone are insufficient to defeat a properly supported motion for summary judgment.[30]  The nonmovant's "evidence, including testimony, must be based on more than mere speculation, conjecture, or surmise."[31]

Though the parties in this case have filed cross-motions for summary judgment, the legal standard remains the same.[32]  Each party retains the burden of establishing the lack of a genuine

[25] *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing *Celotex*, 477 U.S. at 322-23 (1986)).

[26] *Id.* (citing *Celotex*, 477 U.S. at 325).

[27] *Garrison v. Gambro, Inc.*, 428 F.3d 933, 935 (10th Cir. 2005).

[28] *Mitchell v. City of Moore, Okla.*, 218 F.3d 1190, 1197 (10th Cir. 2000) (citing *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998)).

[29] *Adler*, 144 F.3d at 671.

[30] *White v. York Int'l Corp.*, 45 F.3d 357, 363 (10th Cir. 1995).

[31] *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).

[32] *City of Shawnee v. Argonaut Ins. Co.*, 546 F. Supp. 2d 1163, 1172 (D. Kan. 2008).

issue of material fact and entitlement to judgment as a matter of law.[33]   Each motion will be considered separately.[34]   "To the extent the cross-motions overlap, however, the court may address the legal arguments together."[35]   Finally, summary judgment is not a "disfavored procedural shortcut," but it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action."[36]

### B. *Pro Se* Standard

"A *pro se* litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers."[37]   Further, the Courts must take additional precautions before ruling on a motion for summary judgment when a *pro se* litigant is involved: "The rights of *pro se* litigants require careful protection where highly technical requirements are involved, especially when enforcing these requirements might result in a loss of the opportunity to prosecute or defend a lawsuit on the merits."[38]   However, "*pro se* litigants are subject to the same rules of procedure that govern other litigants."[39]   "We do not believe it is the proper function of the district court to assume the role of advocate for the *pro se* litigant."[40]   For this reason, "the court will not construct arguments or theories for the plaintiff in the absence of any

---

[33] *United Wats, Inc. v. Cincinnati Ins. Co.*, 971 F. Supp. 1375, 1381-82 (D. Kan. 1997) (citing *Houghton v. Foremost Fin. Servs. Corp.*, 724 F.2d 112, 114 (10th Cir.1983)).

[34] *Atl. Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1148 (10th Cir. 2000).

[35] *Berges v. Standard Ins. Co.*, 704 F. Supp. 2d 1149, 1155 (D. Kan. 2010).

[36] *Celotex*, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

[37] *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

[38] *Jaxon v. Circle K Corp.*, 773 F.2d 1138, 1140 (10th Cir. 1985).

[39] *DiCesare v. Stuart*, 12 F.3d 973, 979 (10th Cir. 1993).

[40] *Hall*, 935 F.2d at 1110.

discussion of those issues."[41]  Even a *pro se* litigant "does not escape the essential burden under summary judgment standards of establishing that there is a genuine issue as to a fact material to [her] case in order to avert summary judgment."[42]

### III.    Analysis

### A.  Plaintiff's Motion for Summary Judgment

The Court is mindful that because Ms. Murdock appears *pro se* in this case, it must construe her pleadings and motions liberally.[43]  In this context, liberal construction compels the Court "to look beyond a failure to cite proper legal authority, confusion of legal theories, and poor syntax or sentence construction."[44]  However, the fact that Plaintiff proceeds *pro se* does not excuse her "noncompliance with every litigant's duty to comply with the fundamental rules of procedure."[45]  Any party moving for summary judgment must show that there is no genuine dispute as to any material fact and that she is entitled to judgment as a matter of law.[46]  Summary judgment procedure requires that Plaintiff provide support for her factual allegations by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of

---

[41] *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991).

[42] *Hass v. U.S. Air Force*, 848 F. Supp. 926, 929 (D. Kan. 1994) (quoting *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990)).

[43] *See Hall*, 935 F.2d at 1110 & n. 3 (requiring liberal construction of a *pro se* party's pleadings).

[44] *Id.* at 1110.

[45] *Hammad v. Bombardier Learjet, Inc.*, 192 F. Supp. 2d 1222, 1229 (D. Kan. 2002) (citing *Ogden v. San Juan County*, 32 F.3d 452, 455 (10th Cir.1994)).

[46] Fed. R. Civ. P. 56(a).

the motion only), admissions, interrogatory answers, or other materials . . . ."[47]  These factual allegations must be numbered, and must also "refer with particularity to those portions of the record upon which [the] movant relies."[48]

Plaintiff's motion for summary judgment includes over eight pages of handwritten narrative without numbered paragraphs or any citation to the record.  In the few pages where she presents her factual allegations in lettered paragraphs, Plaintiff fails to support her allegations by referring with particularity to relevant portions of the record.  A *pro se* litigant may not simply rely upon conclusory allegations.[49]   Although Murdock submitted nearly 400 pages of documents with her amended complaint, the Court cannot serve as Plaintiff's advocate by constructing a factual statement in compliance with summary judgment procedure.  Because Plaintiff's motion fails to establish the absence of a genuine issue of material fact or to demonstrate her entitlement to judgment as a matter of law, her motion for summary judgment must be denied.

### B.  Defendant's Motion for Summary Judgment

#### 1.    Race and Sex Discrimination

Plaintiff first asserts claims for race and sex discrimination under Title VII.[50]   More specifically, Plaintiff contends that she suffered race discrimination related to two comments that

---

[47] Fed. R. Civ. P. 56(c)(1)(A); *see* D. Kan. Rule 56.1(d) ("All facts on which a motion or opposition is based must be presented by affidavit, declaration under penalty of perjury, and/or relevant portions of pleadings, depositions, answers to interrogatories, and responses to requests for admissions.")

[48] D. Kan. Rule 56.1(a).

[49] *Hall*, 935 F.2d at 1110.

[50] Plaintiff's amended complaint also asserts a claim for sex discrimination, which survived the City's second motions to dismiss.  However, neither Plaintiff nor Defendant mentions this claim in their motions for summary judgment.  Nonetheless, the Court may consider the claim and grant summary judgment *sua sponte*.  Although "the practice of granting summary judgment *sua sponte* is not favored," a *sua sponte* order of summary judgment may be appropriate if "the losing party was on notice that she had to come forward with all of her evidence."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986) (quoting *Procter & Gamble Co. v. Haugen*, 317 F.3d

she attributes to her supervisor, Howard Morris.  Plaintiff also contends that she suffered both race and sex discrimination by virtue of disparate treatment relating to her termination.  As is common in Title VII cases, Plaintiff has not come forward with direct evidence of race or sex discrimination.  In the absence of direct evidence, the Court evaluates Plaintiff's claims under the burden-shifting framework of *McDonnell Douglas Corp. v. Green*.[51]   Under *McDonnell Douglas*, the plaintiff bears the initial burden of production to establish a prima facie case of discrimination.[52] If the plaintiff establishes a prima facie case, the burden shifts to the defendant to articulate a legitimate and nondiscriminatory reason for its actions.[53]   If the defendant articulates a legitimate nondiscriminatory reason, the burden shifts back to plaintiff to present evidence from which a jury may reasonably conclude that the defendant's proffered reason is pretextual and unworthy of belief.[54]

To establish a prima facie case of discrimination, Murdock must show that (1) she is a member of a protected class; (2) she suffered an adverse employment action; (3) she was qualified for her position; and (4) she was treated less favorably than others not in the protected class, giving rise to an inference of discrimination.[55]  "The plaintiff's burden at the prima facie stage of the *McDonnell Douglas* analysis is not onerous."[56]  Plaintiff satisfies the first element as

---

1121, 1132 (10th Cir. 2003)).  Here, *sua sponte* consideration is appropriate because both parties have come forward with comprehensive factual allegations in their respective motions for summary judgment.

[51] 411 U.S. 792, 802-05 (1973); *see Stover v. Martinez*, 382 F.3d 1064, 1070 (10th Cir. 2004).

[52] *McDonnell Douglas*, 411 U.S. at 802.

[53] *Timmerman v. U.S. Bank, N.A.*, 483 F.3d 1106, 1113 (10th Cir. 2007).

[54] *Beaird v. Seagate Tech., Inc.*, 145 F.3d 1159, 1165 (10th Cir. 1998); *Piercy v. Maketa*, 480 F.3d 1192, 1203 (10th Cir. 2007) (citing *Sanchez v. Denver Pub. Sch.*, 164 F.3d 527, 531 (10th Cir.1998)).

[55] *EEOC v. PVNF, L.L.C.*, 487 F.3d 790, 800 & n. 5 (10th Cir. 2007).

[56] *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981) (internal quotations omitted).

a member of a protected class by virtue of her female gender and her African-American race.[57]
The second element is also satisfied because Plaintiff's termination constitutes an adverse
employment action.[58]  With the exception of the Rowles incident on February 15, 2007, there is
no dispute the Plaintiff satisfies the third element as a qualified van operator.  The Court finds
that Plaintiff satisfies the fourth element as to her claims of race and sex discrimination arising
from alleged disparate treatment concerning her termination.  Murdock claims that she was
terminated because she was an African-American woman who issued threats after being struck
by a Caucasian woman, while Terry Beaver, a Caucasian male bus driver, suffered no discipline
following an altercation with a passenger.  At this stage of the analysis, Plaintiff's preliminary
allegation is sufficient to show that she was treated less favorably than a male, Caucasian
employee.

However, the Court concludes that Plaintiff does not satisfy the fourth element of a prima
facie case for the portion of her race and sex discrimination claims that rely solely upon two
comments that Plaintiff attributes to Howard Morris.  "Isolated comments, unrelated to the
challenged action, are insufficient to show discriminatory animus in termination decisions."[59]  A
plaintiff must demonstrate that a nexus exists between the statement and the adverse employment
action.[60]  Murdock presents no evidence that either comment has any nexus to her discipline or
termination, which occurred more than five years later.  Plaintiff has also failed to demonstrate

---

[57] *See English v. Colorado Dept. of Corr.*, 248 F.3d 1002, 1008 (10th Cir. 2001) (holding that African-American litigants are members of a protected class); *see Gooch v. Meadowbrook Healthcare Services of Florida, Inc.*, 77 F.3d 492 (10th Cir. 1996) (holding that female litigants are members of a protected class).

[58] *See O'Neal v. Ferguson Const. Co.*, 237 F.3d 1248, 1255 (10th Cir. 2001) (holding that termination constitutes an adverse employment action for the purposes of stating a prima facie case of discrimination under Title VII).

[59] *Cone v. Longmont United Hospital Ass'n*, 14 F.3d 526, 531 (10th Cir. 1994).

[60] *Id.*

that Morris contemplated her race or sex in any way when he used the phrase, "you people."  To the contrary, the evidence before the Court indicates that Morris' statement referred only to van operators in a context concerning competition between van operators for overtime assignments. Further, Plaintiff admits that she lacks any evidence that Morris contemplated Plaintiff's race or sex when he asked, "Do you want me to slap the hell out of you?"  It is uncontroverted that Murdock never heard any co-worker or supervisor make racial slurs toward her or toward any other African-American employee.  The evidence before the Court simply does not support Plaintiff's conclusory allegation that Morris' statements were directed at her race or sex. Therefore, while Plaintiff has stated prima facie claims of race and sex discrimination related to disparate treatment in her termination, she has failed to state a prima facie claim of race discrimination regarding the alleged comments attributed to Howard Morris.

Under *McDonnell Douglas*, the burden now shifts to Defendant to state a legitimate, non-discriminatory reason for terminating Murdock.[61]  The employer's burden at this stage of the analysis is "exceedingly light."[62]  The City alleges that it terminated Murdock for a legitimate reason wholly unrelated to Plaintiff's race and sex, namely, that Plaintiff committed a Class I violation under its Operator's Manual by issuing threatening language to and about Mary Rowles on February 15, 2007.  Further, the City has articulated legitimate reasons for the different outcomes for Murdock and Terry Beaver.  Defendant alleges that following a thorough investigation, the City found that Terry Beaver threatened and used physical force only in self-defense after a large, able-bodied, male passenger had started an altercation.  Defendant credibly distinguishes this altercation from the incident giving rise to Plaintiff's termination, where

---

[61] *McDonnell Douglas*, 411 U.S. at 802.

[62] *Zamora v. Elite Logistics, Inc.*, 478 F.3d 1160, 1165 (10th Cir. 2007).

Plaintiff used threatening language concerning a frail, blind, elderly woman who was departing from Plaintiff and who did not pose a threat.  The Court finds that the City has therefore satisfied its burden by articulating a non-discriminatory reason for Plaintiff's termination.

Because the City has stated a legitimate and non-discriminatory reason for Plaintiff's termination, Plaintiff must now come forward with evidence from which a jury could conclude that the City's proffered reason is pretextual.[63]  "Pretext can be shown by such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employers did not act for the asserted non-discriminatory reasons."[64]  A plaintiff typically makes a showing of pretext with: (1) evidence that the defendant's stated reason is false; (2) evidence that the defendant acted contrary to a written policy; and (3) evidence that the defendant acted contrary to an unwritten policy or practice.[65]  Another way a plaintiff may demonstrate pretext is by producing evidence that she was treated differently from similarly situated employees who violated comparable work rules.[66]  The Court should consider this evidence as a whole.[67]

Here, Plaintiff attempts to demonstrate pretext by alleging that she was treated differently than Terry Beaver under what she believes to be similar circumstances.  However, Plaintiff has failed to provide any evidence sufficient to demonstrate pretext.  Plaintiff concedes that she has no evidence to show that she was terminated for any reason other than her encounter with

---

[63] *Beaird*, 145 F.3d at 1165.

[64] *McDonnell Douglas*, 411 U.S. at 802.

[65] *Kendrick v. Penske Transp. Servs, Inc*., 220 F.3d 1220, 1230 (10th Cir. 2000).

[66] *Id.* at 1232.

[67] *Annett v. Univ. of Kan*., 371 F.3d 1233, 1241 (10th Cir. 2004).

Rowles.  Plaintiff admits that during her encounter with Rowles, she said "I'm about to knock her out," and "Put her on another route or there's going to be some mess."  Plaintiff also confesses that these comments referred to physical violence toward Rowles.  Further, Plaintiff does not offer any evidence to rebut Defendant's position that her conduct constituted a Class I rule violation under the Operator's Manual, warranting immediate termination.  Finally, Plaintiff agrees with the City that Terry Beaver only used the force necessary to protect himself from further attack.  The Court finds that this fact meaningfully distinguishes the circumstances that faced Plaintiff and Terry Beaver.  With no further evidence from Plaintiff, there is no basis upon which a reasonable factfinder could conclude the City's proffered reason for termination was pretextual and unworthy of belief.  Accordingly, Defendant is entitled to summary judgment on Plaintiff's claims for race and sex discrimination.

### 2.    Sexual Harassment

Plaintiff also asserts a claim for sexual harassment under Title VII.  It is well established that a litigant must file a charge of sexual harassment within 300 days of the alleged unlawful conduct.[68]  "Title VII is not intended to allow employees to dredge up old grievances; they must promptly report and take action on discriminatory acts when they occur.  Unlitigated bygones are bygones."[69]  However, courts have recognized that this temporal limitation can be problematic for sexual harassment claims, where the alleged conduct may occur in a series of events spanning months or years.[70]  Accordingly, the Court may consider the complete history of sexual harassment if a contributing act took place no more than 300 days before the plaintiff filed her

---

[68] 42 U.S.C. § 2000e-5(e)(1).

[69] *Duncan v. Manager, Dept. of Safety, City & County of Denver*, 397 F.3d 1300, 1308-09 (10th Cir. 2005).

[70] *See Nat'l Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 115 (2002).

EEOC charge.[71]   When analyzing the proper scope of conduct to consider, a court must determine whether (1) any discrete act falls within the 300-day period before a plaintiff's EEOC charge, and (2) whether that recent act and prior conduct are part of the same unlawful practice.[72] A series of discrete acts over time may constitute the same hostile work environment where "the pre- and post-limitations period incidents involved the same type of employment actions, occurred relatively frequently, and were perpetrated by the same managers."[73]   Nonetheless, an employee may not unreasonably delay the filing of a sexual harassment claim.[74]   While failure to exhaust administrative remedies usually constitutes a jurisdictional bar to suit, a plaintiff's failure to file a timely charge with the EEOC is not a jurisdictional prerequisite, but rather, serves as a defense similar to a statute of limitations.[75]

In its answer to Plaintiff's amended complaint, the City reserved affirmative defenses that Plaintiff's claims are barred by the applicable statute of limitations and that Plaintiff had failed to exhaust her administrative remedies in a timely manner.   The City now argues that it is entitled to summary judgment because Plaintiff's sexual harassment claim is untimely.   The Court agrees.   Because Plaintiff filed her first administrative charge on September 18, 2007, she must demonstrate at least one discrete act of sexual harassment occurring later than November 23, 2006, within the 300 days prior to Plaintiff's first EEOC charge.   Plaintiff's sexual harassment claim primarily relates to three discrete comments attributed to Brad Davis.   The most recent of those alleged comments occurred in 2002, well over 300 days from the date that Plaintiff filed

---

[71] *Id.* at 117.

[72] *Id.* at 120.

[73] *Id.*

[74] *Duncan*, 397 F.3d at 1308.

[75] *Morgan*, 536 U.S. at 121.

her administrative charge.  Accordingly, Plaintiff's sexual harassment claim is untimely as it relates to the alleged comments of Brad Davis.

While Plaintiff also alleges that Brad Davis became angry and jealous when he learned that Murdock was dating Troy Bowens in November of 2002, no facts properly before the Court serve to support any allegation that such jealousy led to sexual harassment after November 23, 2006.  Plaintiff baldly asserts that on February 22, 2007, Anna Sparlin gave Murdock a false "late" designation at Davis' direction.  Plaintiff also alleges that after receiving a "late" designation, she was unfairly sent home for insubordination.  However, the uncontroverted facts and affidavits before the Court tell a different story.  "Late" is a disciplinary designation specifically defined in the Memorandum of Agreement between the City and Plaintiff's union, Teamster Union Local 795.  The affidavits of Jay Banasiak and Michael Vinson, the City's Director of Transit, suggest that the City issued Plaintiff's "late" designation in compliance with the Memorandum of Agreement.[76]  No evidence suggests that Davis had any involvement with Plaintiff receiving a "late" designation.  Further, no evidence suggests that Davis caused Plaintiff to be sent home for insubordination; to the contrary, Jay Banasiak suggests in his affidavit that he unilaterally decided to send Plaintiff home because she yelled at Anna Sparlin so loudly that it was heard throughout the Transit office.

Plaintiff simply cannot support her allegation that the discipline she received on February 22, 2007, was the result of sexual harassment involving Brad Davis.  Because this incident does not constitute a discrete act of sexual harassment within 300 days of Plaintiff's administrative charge, it cannot serve as a timely anchor for the Court's consideration of alleged harassment practices that occurred more than a decade ago.  Defendant is entitled to summary judgment on Plaintiff's untimely claim for sexual harassment.

---

[76] Affidavit of Jay Banasiak, Def. Ex. 2, at 2; Affidavit of Michael Vinson, Def. Ex. 5, at 3.

### 3.    Retaliation

Plaintiff finally claims that Defendant retaliated against her.  The relevant portion of Title VII concerning retaliation claims provides, "[i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice."[77]  Like other claims for discrimination under Title VII, the Court analyzes claims for retaliation under the *McDonnell Douglas* burden-shifting framework.[78]  "To establish a prima facie claim for retaliation, a plaintiff must establish that "(1) she was engaged in opposition to Title VII discrimination; (2) she was subjected to adverse employment action subsequent to or contemporaneous with the protected activity; and (3) there is a causal connection between the protected activity and the adverse employment action."[79]

In support of the first prima facie element, Murdock asserts two distinct sets of factual allegations.  Plaintiff first alleges that she complained when overweight female co-workers in the dispatch office made her work more difficult by assigning a high number of wheelchair-bound passengers to her route.  Plaintiff's first allegation of retaliation is misplaced.  Murdock does not contend that her work assignments were the result of unlawful sexual harassment or discrimination.  Instead, Plaintiff asserts that her co-workers in the dispatch office were simply "mad, jealous, upset and just evil."  While jealousy between co-workers may be unfortunate, it does not independently constitute an unlawful employment practice under Title VII.[80]  The Court finds that Murdock's allegations regarding work assignments fail to demonstrate opposition to Title VII discrimination.

---

[77] 42 U.S.C. § 2000e–3(a).

[78] *Stover v. Martinez*, 382 F.3d 1064, 1070 (10th Cir. 2004).

[79] *Gunnell v. Utah Valley State Coll.*, 152 F.3d 1253, 1262-63 (10th Cir. 1998).

[80] *See* 42 U.S.C. § 2000e-2.

Plaintiff also seeks to establish the first prima facie element retaliation with a second set of allegations concerning the conduct of the City's former superintendent of transportation, Brad Davis.  According to Plaintiff, Davis became angry and jealous in November of 2002, when he learned that Plaintiff was dating another City employee, Troy Bowens.  Plaintiff contends that when this jealousy led Davis to "retaliate" by directing Anna Sparlin to issue Plaintiff a false disciplinary designation of "late."  In January of 2006, Murdock made a verbal complaint to the City's EEO officer, Susan Leiker, alleging that Davis was sexually harassing her.  The Court finds that this verbal complaint is sufficient to satisfy the first prima facie element regarding opposition to Title VII discrimination.[81]  The second prima facie element of retaliation is also satisfied because the parties agree that Plaintiff's verbal complaint preceded her subsequent discipline and termination.

However, Plaintiff cannot satisfy the third prima facie element of retaliation because she has not produced any evidence to establish a causal relationship between her complaint and any adverse employment action.  A causal connection may be shown by "evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action."[82]  "Unless there is very close temporal proximity between the protected activity and the retaliatory conduct, the plaintiff must offer additional evidence to establish causation."[83]  This Circuit has held that a one-and-one-half month period between protected activity and adverse action is independently sufficient to establish causation, while a three-month period is

---

[81] *See Fye v. Oklahoma Corp. Comm'n*, 516 F.3d 1217, 1228 (10th Cir. 2008) (holding that a plaintiff's verbal complaint of sexual harassment is sufficient to satisfy the first prima facie element of retaliation).

[82] *Burrus v. United Tel. Co. of Kan., Inc.*, 683 F.2d 339, 343 (10th Cir.1982).

[83] *O'Neal v. Ferguson Const. Co.*, 237 F.3d 1248, 1253 (10th Cir. 2001) (citing *Conner v. Schnuck Mkts., Inc.*, 121 F.3d 1390, 1395 (10th Cir.1997)).

insufficient.[84]   Here, Plaintiff's verbal complaint occurred in January 2006, more than a year earlier than her discipline on February 22, 2007, or her termination on April 3, 2007.  With no close temporal proximity between the protected activity and the adverse actions, Plaintiff must come forward with evidence to establish causation.  In this case, Plaintiff has failed to produce any evidence that could establish a causal relationship between her verbal complaint and her discipline or termination.  Therefore, Plaintiff has failed to demonstrate a prima facie case of retaliation, and the Court grants Defendant's motion for summary judgment as to Murdock's retaliation claim.

**IT IS ACCORDINGLY ORDERED** that Defendant's Motion for Summary Judgment (Doc. 99) is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Summary Judgment (Docs. 101 and 105) is **DENIED**.

**IT IS SO ORDERED**.

Dated this 18th day of September, 2012.

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE

---

[84] *Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir.1999) (citation omitted).